```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/19/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIE BLIGE,

                                    Plaintiff,

        – against –

CITY UNIVERSITY OF NEW YORK, DENISE DYCE,
PASQUALE MORENA, JOHN SIDERAKIS, CARMELO
BATISTA, and ROBERT CURRY,

                                    Defendants.

**REPORT AND RECOMMENDATION**

1:15-cv-08873 (GBD) (KHP)

**TO: THE HONORABLE GEORGE B. DANIELS, United States District Judge**

**FROM: KATHARINE H. PARKER, United States Magistrate Judge**

Plaintiff Willie Blige, proceeding pro se, commenced this action against his former

employer, the City University of New York ("CUNY"), Denise Dyce, Pasquale Morena, John

Siderakus, Carmelo Batista, and Robert Curry (the "Individual Defendants").  In an Amended

Complaint filed on January 28, 2016, Plaintiff alleges claims of employment discrimination on

the basis of race, color, sex, military status, and arrest record in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and age discrimination in violation of

the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA").  Plaintiff

also appears to assert claims for defamation, breach of contract, and an "unfair labor practice."

On July 18, 2016, CUNY and Defendants Dyce, Siderakus, Bastisa, and Curry (collectively,

the "CUNY Defendants") filed a motion to dismiss the Amended Complaint in its entirety for

failure to state a claim and for lack of subject-matter jurisdiction pursuant to Federal Rules of

Procedure 12(b)(6) and 12(b)(1) ("Rules 12(b)(6) and 12(b)(1)").  On August 25, 2016, Defendant

Morena also filed a motion to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6).

For the reasons that follow, this Court finds that Plaintiff's ADEA and state law claims against CUNY and its agents are barred by the Eleventh Amendment and, thus, recommends the dismissal of these claims for lack of jurisdiction. As to the remainder of Plaintiff's claims, he has failed to state a claim for relief pursuant to Rule 12(b)(6). This Court therefore recommends that Defendants' Motion to Dismiss be **GRANTED** and Plaintiff's Amended Complaint be dismissed in its entirety.

## BACKGROUND

I.    ***Plaintiff's Employment With CUNY***

Plaintiff, an African-American male who is over the age of 40, was employed as a Campus Security Assistant ("CSA") by the City College of New York.[1]

On or about July 25, 2014, one of Plaintiff's female coworkers, CSA Taylor, provided a signed statement to the CUNY Department of Public Safety in which she complained of two incidents allegedly involving Plaintiff. According to this statement, on July 24, 2014, Plaintiff approached CSA Taylor in a stairwell, grabbed her with force, attempted to kiss her against her will several times, and prevented her from passing by him on the stairs. CSA Taylor stated that this incident lasted several minutes and did not end until another CSA, CSA Freeman, told Plaintiff to let CSA Taylor pass. CSA Taylor also reported that she discovered a bruise on her arm after the incident. CSA Freeman provided a signed statement to the CUNY Department of

---

[1] City College of New York is a senior college within CUNY, which is an organization of higher education institutions. N.Y. Educ. Law § 6202(2)-(5); *Weinbaum v. Cuomo*, 219 A.D.2d 554, 555 n.1 (1st Dep't 1995) (listing City College as one of the "senior colleges" at issue in the case).

Public Safety regarding the incident in which he reported witnessing Plaintiff blocking CSA Taylor as she was trying to descend the stairs.

CSA Taylor's July 25, 2014 statement also described a prior incident during which Plaintiff forcefully attempted to kiss her while they were waiting for an elevator together at work. CSA Taylor reported that she "had to use physical force" to stop Plaintiff's advances. CSA Taylor stated that, following this first incident, she told Plaintiff that his conduct was inappropriate and that she would report him if it occurred again.

Based upon these allegations, the New York Police Department arrested Plaintiff on July 25, 2014. The Desk Appearance Ticket annexed to Plaintiff's Amended Complaint indicates that Plaintiff was charged with Assault in the Third Degree.[2]

In a letter dated July 28, 2014, CUNY advised Plaintiff that his employment would be suspended without pay, effective July 25, 2014, due to the pending criminal action. CUNY further explained that the suspension would remain in effect until the conclusion of the criminal proceedings, and that CUNY would thereafter file internal disciplinary charges against him.

On March 12, 2015, the criminal charges against Plaintiff were dismissed on speedy trial grounds. On March 25, 2015, CUNY sent Plaintiff a letter advising that he would be reinstated to the payroll effective March 13, 2015, but directed him not to report to work due to Human Resource's ongoing investigation into CSA Taylor's complaint.

---

[2] The Certificate of Disposition issued by the state court dismissing the criminal charges against Plaintiff also indicates that he was arraigned on charges of attempted assault and harassment.

In a letter dated March 27, 2015, CUNY informed Plaintiff that it was initiating disciplinary charges against him for misconduct in accordance with the provisions of Article XXV of the 2006-2009 Agreement covering Custodial, Stores-Stock and Security Employees of the Classified Service of the City University of New York (hereinafter, the "CBA").[3]  The March 27, 2015 letter stated that "[i]nasmuch as the attached charges pertain to an allegation of your involvement in an incident of workplace violence, the Step I hearing will be bypassed in accordance with Article XXV, Section 2 of [the CBA],[4] and this matter will proceed directly to Step II."  (Pl. Am. Compl. p. 6.)  In addition to describing the basis for the charges against Plaintiff, the letter also advised that a Step II hearing was scheduled for April 22, 2015 and provided a recitation of Plaintiff's rights in connection with the disciplinary proceedings.

The Step II hearing was held on April 22, 2015.  Plaintiff attended the hearing with counsel, the Local 237 Citywide Grievance Coordinator.  On May 21, 2015, CUNY mailed Plaintiff a copy of the nine-page decision issued in the Step II hearing.  In this decision, the CUNY Chancellor's Designee concluded that Plaintiff's actions constituted misconduct and a violation of CUNY's sexual harassment policy, as well as other workplace policies.  Accordingly, CUNY terminated Plaintiff's employment.

---

[3] Article XXV of the CBA, entitled "Disciplinary Procedure," states that "[t]he procedures in this Article shall be the exclusive procedures for disciplinary action and resolving disputes relating to such disciplinary action."  (Doc. No. 28-13.)

[4] Section 2 of Article XXV states, in relevant part: "[i]n cases involving attempted or actual acts of violence or threats of violence in the workplace, the First Step of the disciplinary procedure shall be bypassed and the disciplinary procedure shall proceed directly to the Second Step."  (Doc. No. 28-13.)  In general, Article XXV provides for a Step I hearing, which can be appealed in a Step II hearing, which can be appealed to either an arbitration before the American Arbitration Association or the CUNY Civil Service Commission.

Plaintiff appears to have appealed the Step II decision to arbitration.[5]  On March 2, 2015, a hearing was held before Arbitrator Marilyn Levine of the American Arbitration Association.  In an Opinion and Award dated March 28, 2016, Arbitrator Levine concluded that just cause existed for CUNY's termination of Plaintiff's employment.

**II.**      ***Proceedings Before Administrative Agencies***

On or about March 23, 2015, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR").  In his NYSDHR Complaint, Plaintiff alleged that CUNY discriminated against him on the basis of arrest record, military status, and sex.  Plaintiff did not check the boxes to indicate discrimination on the basis of any other protected characteristics. The only factual assertion made in Plaintiff's NYSDHR Complaint is that "two females were involved in a physical altercation on the job. And no one was arrested[,] just let go and given another duty assignment elsewhere."  (Doc. No. 28-3.)  Plaintiff's NYSDHR Complaint was dual-filed with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to the work sharing agreement between the EEOC and the NYSDHR.

On September 16, 2015, the NYSDHR issued a finding of no probable cause with respect to Plaintiff's claims.  In its Determination and Order, the NYSDHR concluded that its investigation "did not reveal sufficient evidence to establish an inference of discrimination based on arrest record, sex or military status" and therefore dismissed Plaintiff's complaint. (Doc. No. 28-16, p. 5.)

---

[5] Neither party submitted any documentation concerning Plaintiff's appeal from the Step II decision, but both parties submitted a letter from Local 237 to Plaintiff advising him that an arbitration was scheduled for November 17, 2015.

On or about November 2, 2015, the EEOC issued a Dismissal and Notice of Rights stating that it had adopted the findings of the NYSDHR and advising Plaintiff of his right to file a lawsuit.  (Doc. No. 6, p. 10.)

### III.   _Proceedings Before This Court_

On or about November 10, 2015, Plaintiff commenced this action by filing a Complaint against CUNY.[6]  Plaintiff's Complaint asserted claims of discrimination on the basis of race, sex, and age under Title VII and the ADEA.[7]  The Complaint alleged the following scant factual allegations:

> First i was slandered by Human Resources Mrs. Dyce to the Department of Labor Dated 12/18/2014 i was still fighting in criminal court denied due procee. Criminal case Disposition Sealed and Dismissed Dated on 3/18/2015.  Campus [illegible] Step 2 Hearing in April 201In Clear Violation of CUNY Blue Collar Agreement ARTICLE XXV-Disciplinary Procedure.Yes i [illegible] reinstated back to work for several weeks only FIRST cHECK I RECEIVED WAS ONLY for One Dollar$1.00 while I was out of work for 9 months.

(Doc. No. 1, p. 3) (errors and emphasis in original).

On December 15, 2015, Chief Judge Preska issued an Order directing Plaintiff to file an amended complaint (the "December 15th Order") (Doc. No. 5).  The December 15th Order explained the requisite elements for pleading an employment discrimination claim and pointed out deficiencies in Plaintiff's causes of action, noting that his allegations, as pled, were conclusory and insufficient to state a claim.  The December 15th Order instructed Plaintiff to provide a short and plain statement of the facts supporting each claim against each defendant

---

[6] The caption of the initial Complaint did not list the Individual Defendants.

[7] Plaintiff also purported to assert a claim under the Equal Pay Act in his initial Complaint.  This cause of action was not advanced in the Amended Complaint.

6

in a manner sufficient to illustrate: "who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation(s) occurred; where such violation(s) occurred; and why Plaintiff is entitled to relief." (Doc. No. 5, p. 6.)  The Court also provided Plaintiff with a form complaint to utilize and further advised him that the "amended complaint will completely replace, not supplement, the original complaint."  (*Id.*)

On or about January 28, 2016, Plaintiff filed an Amended Complaint for Employment Discrimination, using the form annexed to Judge Preska's Order.  On the Amended Complaint form, Plaintiff asserts claims for discrimination on the basis of race, color, and age in violation of Title VII and the ADEA.  The Amended Complaint form contained a section for Plaintiff to identify the types of discriminatory conduct he alleges in the action.  In this section, Plaintiff alleges the following acts of discrimination: termination of his employment; unequal terms and conditions of his employment; unfair labor practice; and slander.  The Amended Complaint also states that Plaintiff is seeking $700,000 as relief in this action.

In addition to completing the Amended Complaint form, Plaintiff submitted a letter to the Court describing his claims.  Plaintiff's letter recites the following allegations:

- CUNY and Human Resources—which Plaintiff defines as all of the Individual Defendants—defamed him in order to induce the New York State Department of Labor ("DOL") to deny his application for unemployment insurance benefits during his suspension.[8]  More specifically, Defendants falsely told the DOL that

---

[8] Plaintiff's Amended Complaint annexed a portion of a letter from the New York State Department of Labor, dated December 18, 2014, denying Plaintiff's application for unemployment insurance benefits for the period beginning on July 25, 2014.  The DOL's letter states, in relevant part: "You were suspended as of 7/25/14 because you violated the sexual harassment policy when you forcibly tried to kiss an unwilling coworker.  Your employer's policy states sexual harassment is illegal and will not be tolerated." (Doc. No. 6, p. 14.)  The DOL further found that Plaintiff "made the willful false statement to obtain benefits that you had a lack of work with CUNY when you knew that you were actually on suspension from CUNY for violation of the sexual harassment policy."  (*Id.*)

Plaintiff was charged with sexual harassment when he was actually "charged with [sic] in the 4th degree nothing sexual as per N.Y.P.D." (Doc. No. 6-2, p. 1.)

- Defendant Dyce and "Human Resources [] never took interest in getting the facts or investigating for the the [sic] truth for 5 months before slandering me." (*Id.*)

- After being reinstated to the CUNY payroll in March 2015, Plaintiff's first pay check was for only $1.00. CUNY subsequently told Plaintiff that he was overpaid $2,000, which Plaintiff disputes.

- Defendants enforced "charges" against him that were already dismissed in criminal court. He was ordered to attend a Step II disciplinary hearing for workplace violence, "which is clearly a [b]reach of [c]ontract Article XXV." (*Id.* at 2.)

- In an unspecified situation involving two male CSAs, CUNY did not breach Article XXV of the CBA. CSA Frye, a Caucasian male who is under 40 and not a veteran, was only suspended for five days, was not charged with a crime, and "gained a $100,000 settlement" after he sued "City college for something wrong while [F]rye was detained." (*Id.* at 3.) CSA Freeman, an African-American male who is under 40 and not a veteran, was arrested and suspended for nine months, but "was reinstated[,] never recharged (Double Jeopardy) by (HR)" and received payment for "all [m]onies lost while out of work." (*Id.*)

- At some unidentified time, the locker room that Plaintiff used was moved under the supervision of Defendant Curry and another individual from Human Resources. Plaintiff's property and the property of CSA Freeman were left in their respective lockers. Plaintiff's property was subsequently removed or stolen, whereas CSA Freeman's property was not. Plaintiff was unable to recover his missing possessions, which included personal items.

- Plaintiff lost faith in his Union's ability to represent him because the Union representative's son began working at CUNY "soon after [his] incident." (*Id.* at 4.) Plaintiff was met with resistance and not given any assistance from his Union in connection with "the contract violations[,] they just dropped the ball." Plaintiff "feel[s that] the union rep['s] son working there is QUID PRO QUO." (*Id.*) (emphasis in original).

Plaintiff also annexed several documents to his Amended Complaint, including: the

March 25, 2015 letter from CUNY; a partially incomplete copy of the March 27, 2015 letter from

CUNY; the November 2, 2015 letter from CUNY; a partially incomplete copy of the NYSDHR's

Determination and Order; the EEOC's Dismissal and Notice of Rights; a Desk Appearance Ticket

issued by the New York Police Department dated July 25, 2014; a Certificate of Disposition in the matter of *People of the State of New York v. Willie A. Blige*, Docket No. 2014NY066534; a partially incomplete copy of Article XXV of the CBA; a partially incomplete copy of the New York State Department of Labor's Notice of Determination on Plaintiff's application for unemployment insurance benefits; and the written statements of CSA Taylor and CSA Freeman provided to CUNY Department of Public Safety.

On July 18, 2016, the CUNY Defendants filed the instant motion to dismiss.  On August 15, 2016, counsel for the CUNY Defendants filed a letter to the Court requesting an enlargement of the motion to dismiss briefing schedule, explaining that Plaintiff had advised CUNY that he was unaware he could oppose their motion and that he needed additional time to prepare and file his opposition papers.  (Doc. No. 34.)  Magistrate Judge Barbara Moses granted this application and extended Plaintiff's time to oppose the CUNY Defendants' motion to September 14, 2016.  (Doc No. 35.)  On September 12, 2016, the CUNY Defendants filed a second letter on Plaintiff's behalf, informing the Court that Plaintiff was attempting to secure counsel and that he sought an additional 30 days to oppose the CUNY Defendants' motion. (Doc. No. 42.)  Judge Moses granted this request and extended Plaintiff's time to file his opposition to October 14, 2016.  (Doc. No. 43.)

On August 25, 2016, Defendant Morena joined the CUNY Defendants in seeking dismissal of the Amended Complaint.  (Doc. Nos. 39-41.)  On September 15, 2016, counsel for Defendant Morena wrote to the Court to note that Plaintiff had failed to file a timely opposition to his motion and to request that the Court deem the motion fully submitted.  (Doc. No. 44.) On September 19, 2016, Judge Moses entered another scheduling order to extend Plaintiff's

time to oppose Defendant Morena's motion to dismiss to October 14, 2016—the same deadline as his opposition to the CUNY Defendants' motion.  (Doc. No. 46.)

Despite receiving multiple extensions, Plaintiff did not file any opposition to Defendants' motions to dismiss.  On October 19, 2016, Defendants submitted a joint letter requesting that their motions be treated as unopposed.  (Doc. No. 47.)

**DISCUSSION**

I.   _**Legal Standard Governing Motions To Dismiss Under Rule 12(b)(1)**_

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  _Makarova v. United States_, 201 F.3d 110, 113 (2d Cir. 2000); _Ford v. D.C. 37 Union Local 1549_, 579 F.3d 187, 188 (2d Cir. 2009).  To withstand a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  _Makarova_, 201 F.3d at 113.  Moreover, in considering such a motion, the court generally "must accept as true all material factual allegations in the complaint."  _Triestman v. Fed. Bureau of Prisons_, 470 F.3d 471, 474 (2d Cir. 2006) (quoting _J.S. ex rel. N.S. v. Attica Cent. Schs._, 386 F.3d 107, 110 (2d Cir. 2004)).  The court does not draw all reasonable inferences in the plaintiff's favor, however. _J.S. ex rel. N.S._, 386 F.3d at 110.  "Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists."  _Graham v. Select Portfolio Servicing, Inc._, 156 F. Supp. 3d 491, 499 (S.D.N.Y. 2016) (citing _APWU v. Potter_, 343 F.3d 619, 627 (2d Cir. 2003)).

II.     ***Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)***

When considering a motion to dismiss under Rule 12(b)(6), a court must accept all

factual allegations in the complaint as true and draw all inferences in the plaintiff's favor.  *Cruz*

*v. Beto*, 405 U.S. 319, 322 (1972); *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir.

2015).  To survive the motion, the Court must determine whether the complaint contains

"sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  While detailed factual allegations are not required, the complaint must contain more

than mere "labels and conclusions."  *Id*.  It must contain more than "naked assertion[s] devoid

of further factual enhancement."  *Id.* (citation omitted).  And, it must contain more than a

"formulaic recitation of the elements of a cause of action."  *Id*.  As the U.S. Supreme Court

explained in *Ashcroft v. Iqbal*, the "plausibility standard" asks for "more than a sheer possibility

that a defendant has acted unlawfully."  *Id*.

In *Littlejohn*, the Second Circuit further elaborated on the "plausibility standard" in the

context of claims of unlawful discrimination under Title VII.  795 F.3d at 307-11.  It held that the

facts asserted in the complaint must "give plausible support to a minimal inference of

discriminatory motivation" – the inference needed to establish a *prima facie* case of

discrimination under the burden-shifting paradigm applicable to Title VII cases under

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Id*. at 311.  However, it is not necessary

at the pleading stage for a plaintiff to provide additional facts that would support the

plausibility of "the ultimate question of whether the adverse employment action was

attributable to discrimination."  *Id*.  Of course, some facts in a complaint may go to the

11

plausibility of both a *prima facie* case of discrimination and the ultimate question of whether there was intentional discrimination.  But for purposes of a motion to dismiss, the Court's analysis is focused only on whether the facts in the complaint plausibly support a *prima facie* case of discrimination.

The same standards apply to motions to dismiss pro se complaints.  *See Legeno v. Corcoran Grp*., 308 F. App'x 495, 496 (2d Cir. 2009); *Jenkins v. New York City Dep't of Educ.*, No. 10-cv-6159 (BSJ) (THK), 2011 WL 5451711, at *3 (S.D.N.Y. Nov. 9, 2011) (pro se status "does not . . . excuse a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure").  However, a pro se plaintiff's complaint must be construed liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and interpreted as raising the strongest arguments it suggests.  *Triestman*, 470 F.3d at 474; *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).

In ruling on Defendants' motions to dismiss, the Court may consider not only the Amended Complaint, but also "the plaintiff[']s relevant filings with the EEOC and other documents related to plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either incorporate[d] by reference or are integral to and solely relie[d] upon by the complaint."  *Littlejohn*, 795 F.3d at 305 n.3 (internal quotation omitted).  Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).  *See also Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a

[document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment") (citation omitted).

Finally, Plaintiff's decision not to oppose Defendants' motions to dismiss does not, standing alone, require the dismissal of his claims. *Martinez v. Aycock-West*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016). Rather, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Id.* (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)).

### III. *Sovereign Immunity Under the Eleventh Amendment*

The CUNY Defendants (that is, all Defendants besides Defendant Morena) move to dismiss Plaintiff's ADEA and state law claims for lack of subject matter jurisdiction. The CUNY Defendants contend that Plaintiff's ADEA and state law defamation claims are barred because, as an agency of the State of New York, they are immune from suit under the Eleventh Amendment. This Court agrees.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

Although not explicit in its text, the Eleventh Amendment also prohibits suits against a state brought by the state's own citizen. *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004). "It is well settled that the 'ultimate guarantee' of the Eleventh Amendment is that "nonconsenting States may not be sued by private individuals in federal court." *Clissuras v. City*

*Univ. of N.Y.*, 359 F.3d 79, 81 (2d Cir. 2004).  *See also Seminole Tribe of Fla. v. Florida*, 517 U.S.

44, 54-55 (1996) ("[f]or over a century we have reaffirmed that federal jurisdiction over suits

against unconsenting States was not contemplated by the Constitution when establishing the

judicial power of the United States").  Additionally, sovereign immunity extends not only to the

State itself, but also to "state instrumentalities that are, effectively, arms of a state," *Mary Jo C.*

*v. N.Y. State & Local Ret. Sys*., 707 F.3d 144, 151-52 (2d Cir. 2013), as well as to claims against

state officials for acts committed in their official capacities.  *Darcy v. Lippman*, 356 F. App'x 434,

436-37 (2d Cir. 2009); *Ross v. State of New York*, No. 15-cv-3286 (JPO), 2016 WL 626561, at *3

(S.D.N.Y. Feb. 16, 2016).  The Second Circuit has conclusively held that CUNY senior colleges are

an "arm of the state" that is entitled to sovereign immunity.  *Clissuras,* 359 F.3d at 83; *Ross*,

2016 WL 626561, at *3 (holding that the Eleventh Amendment barred the majority of plaintiff's

claims against CUNY).

Sovereign immunity precludes Plaintiff's claims unless one of the three exceptions to

the doctrine applies: 1) the State has waived its immunity; (2) the State's immunity is abrogated

by a valid exercise of Congressional authority; or (3) under the *Ex parte Young* doctrine, a state

official may be sued in an action that is only seeking prospective injunctive relief.  *Barry v. City*

*Univ. of N.Y.*, 700 F. Supp. 2d 447, 452 (S.D.N.Y. 2010) (citing *In re Deposit Ins. Agency*, 482 F.3d

612, 617 (2d Cir. 2007)).  None of these exceptions apply to Plaintiff's claims under the ADEA or

state law in this case.[9]  First, there is no basis to conclude that New York has waived its

sovereign immunity with respect to the claims asserted here.  *See Darcy*, 356 F. App'x at 436

---

[9] CUNY correctly does not contend that Plaintiff's Title VII claims are barred by the Eleventh
Amendment.  This is because the Supreme Court has held that Congress abrogated States' immunity in
passing Title VII.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 448 (1976).

(finding that there is no "suggestion that the [S]tate [of New York] has consented to be sued"

under the ADEA); *Ross*, 2016 WL 626561, at *3 (dismissing state law claims as barred by the

Eleventh Amendment); *Finch v. New York*, No. 10-cv-9691 (VB), 2012 WL 2866253, at *12

(S.D.N.Y. May 30, 2012) (holding that sovereign immunity precludes claims for breach of

contract).  As to the abrogation exception, the United States Supreme Court has held that

Congress did not validly abrogate states' Eleventh Amendment immunity in passing the ADEA.

*See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000).  Finally, the *Ex parte Young* doctrine is

plainly inapplicable to this action because the Amended Complaint seeks only monetary

damages in the amount of $700,000.00, not prospective injunctive relief.  *See State Emps.*

*Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (explaining that under the *Ex*

*parte Young* doctrine, "a plaintiff may sue a state official acting in his official capacity—

notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of

federal law").  For all of the foregoing reasons, this Court recommends that Plaintiff's ADEA and

state law claims against the CUNY Defendants be dismissed pursuant to Rule 12(b)(1) as a

matter of law with prejudice.  Sovereign immunity does not, however, apply to individual

defendants who are not state actors or who are accused of wrongdoing in their personal

capacities.  *See Stevens v. New York*, 691 F. Supp. 2d 392, 398 (S.D.N.Y. 2009) ("the Eleventh

Amendment does not bar suits against state officials in their individual capacities").  Therefore,

the ADEA and state law claims against the Individual Defendants in their personal capacities

cannot be dismissed on this basis.[10]

---

[10] According to CUNY's memorandum of law in support of its motion to dismiss, Defendant Morena was
not an employee of the State, but rather was an employee of the Research Foundation of the City
University of New York, a private, not-for-profit educational corporation.  Defendant Morena does not

**IV.**     ___Liability Of Individual Defendants Under Title VII Or The ADEA___

The Individual Defendants argue that Plaintiff's Title VII and ADEA claims should be dismissed against them in their personal capacities for failure to state a claim upon which relief may be granted.[11]   They are correct.  It is well established that neither Title VII nor the ADEA provide for individual liability against the agents of an employer, including individuals who hold supervisory responsibilities.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-14 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *see also Darcy*, 356 F. App'x at 436-37 (noting that Title VII and the ADEA do not create causes of action against individual supervisors); *Bonilla v. Smithfield Assocs. LLC*, No. 09-cv-1549 (DC), 2009 WL 4457304, at *3 (S.D.N.Y. Dec. 4, 2009).  Thus, Plaintiff's claims under Title VII and ADEA against the Individual Defendants should be dismissed with prejudice for this reason as a matter of law. And in any event, as discussed below, Plaintiff fails to state a claim under the ADEA and Title VII.

**V.**     ___Plaintiff's Title VII And ADEA Discrimination Claims___

When Plaintiff's Amended Complaint is liberally construed, it appears that he asserts a claim for discrimination in violation of Title VII on the basis of race, color, arrest record, military status, and sex, as well as a claim for age discrimination under the ADEA.  For the reasons that follow, this Court finds that Plaintiff has failed to plead a viable claim on any of these alleged bases.

**A.**  ___Plaintiff's Claims For Discrimination On The Basis Of Age, Race, And Color___

---

dispute this assertion in his moving papers and did not move for dismissal of the claims against him on the grounds of sovereign immunity.

[11] Plaintiff's Amended Complaint does not identify which causes of action are asserted against which of the Defendants.  Construing the Amended Complaint liberally in favor of the pro se Plaintiff, this Court assumes that Plaintiff intends to assert each claim against each Defendant.

Defendants contend that Plaintiff's claims for discrimination on the basis of age, race, and color should be dismissed because Plaintiff failed to exhaust his administrative remedies as to such claims.

Prior to asserting claims under Title VII or the ADEA in federal court, a plaintiff must "present the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency." *Littlejohn*, 795 F.3d at 322 (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006)). *See also Tanvir v. N.Y.C. Health & Hosps. Corp.*, 480 F. App'x 620, 621 (2d Cir. 2012). Claims that are omitted from an EEOC or state agency complaint may still be actionable in a subsequent federal action, however, "if they are 'reasonably related' to the claim filed with the agency," meaning that "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Littlejohn*, 795 F.3d at 322. In making this assessment, federal courts focus "on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Id.*

In Plaintiff's NYSDHR Complaint, which was cross-filed with the EEOC, he claimed discrimination on the basis of sex, arrest record, and military status. Plaintiff did not assert claims for discrimination on any other basis, even though there are check boxes for discrimination on the basis of race/color, age, and other protected characteristics on the NYSDHR Complaint Form. *See Littlejohn*, 795 F.3d at 322. Plaintiff's sparse "Description of Discrimination" on the NYSDHR Complaint Form also does not give any indication that Plaintiff intended to assert claims of age, race, or color. Indeed, the sole factual allegation made in Plaintiff's NYSDHR Complaint was that he was treated differently than "two females" who were

17

involved in a physical altercation in the workplace.  There is nothing in this allegation that could reasonably be construed to implicate race, color, or age.   This Court thus concludes that Plaintiff's race, color and age claims are not "reasonably related" to the claims he presented to the NYSDHR and the EEOC in his administrative charge.  He therefore has failed to exhaust his administrative remedies as to these three claims.  Accordingly, this Court recommends that Plaintiff's claims for discrimination on the basis of race and color under Title VII and age under the ADEA be dismissed as against all Defendants with prejudice.[12]

**B.** **_Plaintiff's Claims For Discrimination On The Basis Of Gender_**

Turning next to Plaintiff's Title VII gender discrimination claims, this Court finds again that Plaintiff has failed to state a claim.  To plead a _prima facie_ case of sex discrimination under Title VII, a plaintiff must make a minimal showing (1) that he is a member of a protected class; (2) that he is qualified for his position of employment; (3) that he suffered an adverse employment action; and (4) that he "can sustain a _minimal_ burden of showing facts suggesting an inference of discriminatory motivation."  _Littlejohn_, 795 F.3d at 311 (emphasis in original).  A plaintiff can demonstrate circumstances giving rise to an inference of discrimination in a variety of ways, such as through "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of

---

[12] Plaintiff is precluded from returning to the agencies to exhaust these claims because they are time barred in so far as they arise from conduct occurring outside of the 300 day claim filing period applicable to Title VII and ADEA claims in New York.  _See_ 42 U.S.C. § 2000e–5(e)(1).  Accordingly, there is no reason to allow Plaintiff the opportunity to replead his claims of race, color, and age discrimination because amendment would be futile. _See, e.g ., Hill v. Curcione,_ 657 F.3d 116, 123 (2d Cir.2011) ("[w]here a proposed amendment would be futile, leave to amend need not be given.")

events leading to the plaintiff's discharge."  *Id.* at 312.  *See also Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 87 (2d Cir. 2015) ("[a] plaintiff must allege that the employer took adverse action against [him] at least in part for a discriminatory reason, and [he] may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination").

Plaintiff's Amended Complaint does not recite any comments by Defendants suggesting gender-based animus.  Nor does it allege that similarly situated female employees received more favorable treatment than he did.  Rather, the Amended Complaint asserts disparate treatment *vis-à-vis* two male CSAs.  Allegations that Defendants treated other employees of the same sex more favorably than Plaintiff, however, does not create an inference of gender discrimination.  *See Littlejohn,* 795 F.3d at 312 (inference of discrimination can arise from, *inter alia,* more favorable treatment of employees outside of the plaintiff's protected group).

In construing the Amended Complaint liberally, the Court also has considered Plaintiff's allegations made in his NYSDHR Complaint, which is referenced in and attached to the Amended Complaint, as if they were set forth in the Amended Complaint itself.  In his NYSDHR Complaint, Plaintiff alludes to disparate treatment, alleging that "two females were involved in a physical altercation on the job.  And no one was arrested.  Just let go and given another duty assignment elsewhere."  (Doc. 28-3, p. 6.)

"[A] plaintiff relying on disparate treatment evidence must show [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]" and that the similarly situated comparators received better treatment.  *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368,

379 (2d Cir. 2003)).  In assessing whether plaintiff and the comparator(s) are similarly situated, relevant factors include, *inter alia*, whether they are "subject to the same standards governing performance evaluation and discipline," *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (citation omitted), and "whether the conduct for which the employer imposed discipline was of comparable seriousness."  *Opoku v. Brega*, No. 15-cv-2213 (KMK), 2016 WL 5720807, at *8 (S.D.N.Y. Sept. 30, 2016) (citation omitted).  Although a plaintiff is not required to put forth detailed facts regarding the comparators, *Brown,* 756 F.3d at 230, "the plaintiff must at least plead allegations from which it is plausible to conclude that the comparators are similarly situated."  *Opuku*, 2016 WL 5720807, at *9.  *See also Weslowski v. Zugibe,* 14 F. Supp. 3d 295, 319 (S.D.N.Y. 2014); *Littlejohn,* 795 F.3d at 312 (holding that "the district court correctly concluded that adverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination").

Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims "where the complaint was entirely devoid of any details regarding the purported comparators, *e.g.*, who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiffs' or how they were treated differently by defendants."  *Offor v. Mercy Med. Ctr.*, 167 F. Supp. 3d 414, 432 (E.D.N.Y. 2016) (citation omitted).  *See also Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015) (plaintiff's allegation that "a non-Haitian employee could 'borrow' vacation days, while Plaintiff could not" did not give rise to an inference of discrimination where plaintiff did not allege any facts about the non-Haitian colleague, such as whether they worked in the same department or had the same job responsibilities or supervisors).

In this case, Plaintiff does not allege any facts to plausibly suggest that he was similarly situated to the "two females" who he claims received better treatment. He does not identify or describe the two women, nor does he allege any facts regarding their positions, job titles, supervisors or other factors that are relevant to employee discipline. Indeed, it is not clear whether the "two females" were even subject to the same CBA disciplinary procedures that applied to Plaintiff. Plaintiff's threadbare allegations do not present any non-speculative basis upon which this Court could conclude that he was similarly situated to the alleged comparators. *See Offor*, 167 F. Supp. 3d at 432 (allegations that "external Moonlighters" of Indian descent received more work hours failed to state a claim because "[s]uch a bare allegation is far too vague and bereft of specifics to plausibly allege a claim of disparate treatment on the part of the Defendants in assigning moonlighting hours"); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) (dismissing plaintiff's gender discrimination claims because "the Amended Complaint does not allege that any *similarly situated* male employee received more favorable treatment than Henry—the Amended Complaint fails to identify, let alone describe, any purported comparator" (emphasis in original)).

Furthermore, Plaintiff also does not provide any details about the alleged "physical altercation" between the women to support his claim that he was disciplined more severely for a similar infraction because of his gender. "In the context of employee discipline, . . . the plaintiff and the similarly situated employee must have engaged in comparable conduct, that is, conduct of comparable seriousness." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015) (citation omitted). The dearth of detail about the female employees' altercation makes it impossible for this Court to conclude that the incident is at all comparable to the

21

conduct for which Plaintiff was disciplined, namely forcibly kissing and touching a co-worker on two incidents.

In short, Plaintiff's "naked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) (quoting *Doe v. Columbia Univ.*, 14-cv-3573 (JMF), 2015 WL 1840402, at *7 (S.D.N.Y. Apr. 21, 2015)).  This Court accordingly recommends that Plaintiff's cause of action for gender discrimination under Title VII be dismissed as against all Defendants, but without prejudice to replead his gender discrimination claim against CUNY.

   **C.** **_Plaintiff's Claims For Discrimination On The Basis Of Arrest Record And Military Status_**

In his NYSDHR Complaint, Plaintiff asserted claims for discrimination on the basis of arrest record and military status.  It is unclear whether Plaintiff intends to pursue these claims in federal court, as the Amended Complaint does not specifically recite a cause of action for employment discrimination due to arrest record or military status.  However, given Plaintiff's status as a pro se litigant, the Court will nevertheless address these claims since they are referenced in the documents Plaintiff annexed to the Amended Complaint.  This Court finds that such claims would fail as a matter of law because neither Title VII nor the ADEA—the only two statutes under which Plaintiff indicated that he was asserting a claim[13]—prohibit

---

[13] The Court's form Complaint for Employment Discrimination actions, which Plaintiff utilized, contains a check list of anti-discrimination statutes under which a plaintiff could potentially bring suit, as well as an explanation of the characteristics protected under each law.  In both his initial Complaint and Amended Complaint, Plaintiff checked the appropriate lines for asserting a claim under Title VII and the ADEA, but he declined mark the space indicating a claim under the New York State and City Human Rights Laws.  Accordingly, this Court does not address whether Plaintiff has stated a claim under these laws.  In any event, even if Plaintiff's Amended Complaint were construed as asserting a claim under the State and/or

discrimination on the basis of arrest record or military status.  *See generally* 42 U.S.C. § 2000-e-2(a) (prohibiting discrimination on the basis of race, color, religion, sex and/or national origin); 29 U.S.C. § 623 (prohibiting discrimination because of age)*; see also Williams v. City of New York*, 916 F. Supp. 2d 517, 524 n.3 (S.D.N.Y. 2013) ("Title VII does not address discrimination based on a criminal record"); *Gourdine v. Cabrini Med. Ctr.*, 307 F. Supp. 2d 587, 598 (S.D.N.Y. 2004) ("Title VII does not include military status as a basis for unlawful discrimination"), *aff'd in relevant part*, 128 F. App'x 780, 782 (2d Cir. 2005).

## VI.     *Plaintiff Cannot State A Claim For Defamation*

The Court next turns to Defendants' request to dismiss Plaintiff's claim for defamation pursuant to Federal Rules of Civil Procedure 12(b)(6).  To state a claim for defamation under New York law, a plaintiff is required to plead that defendant made (1) a false, defamatory statement of fact about plaintiff (2) that was published to a third party, (3) was made with the applicable level of fault, (4) was either defamatory *per se* or caused the plaintiff special harm, and (5) was not protected by privilege.  *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011).  Although the defamatory statement need not be plead *in haec verba,* "a pleading is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated."  *Camp Summit of Summitville, Inc. v. Visinski*, No. 06-cv-4994 (CM) (GAY), 2007 WL 1152894, at * 10 (S.D.N.Y. Apr. 16, 2007) (internal quotations omitted).  *See also Allen v. St. Cabrini Nursing Home, Inc.*, No. 00-cv-8558 (CM), 2001 WL 286788, at *5 (S.D.N.Y. Mar. 9, 2001) ("plaintiff must

---

City law, this Court would nevertheless recommend declining the exercise of supplemental jurisdiction over such a claim because Plaintiff has not stated a federal cause of action.  28 U.S.C. § 1367(c)(3).

allege the particular words complained of as well as the time, place, and manner of the false statement, and specify to whom it was made"), *aff'd,* 64 F. App'x 836 (2d Cir. 2003).

Plaintiff's Amended Complaint is devoid of the specifics necessary to state a defamation claim.  First, Plaintiff summarily alleges that Defendant Dyce and Human Resources slandered him, but he does not state the substance of those statements, when they were made, or to whom they were made, amongst other missing details.  *See Camp Summit of Summitville, Inc.*, 2007 WL 1152894, at *12 (dismissing claim of defamation that failed to identify who made the defamatory remarks and to whom the comments were made, and collecting cases holding the same).

Plaintiff next alleges that CUNY and "Human Resources (HR)" falsely reported to the DOL that he was suspended for sexual harassment.   These assertions, like those discussed in the preceding paragraph, are too vague and conclusory to state a claim for defamation. Plaintiff does not identify which CUNY employee made the statement, nor does he allege when the statement was made or who at the DOL was the recipient of the statement.  These omissions are fatal to his claim.  *See Neal v. Asta Funding, Inc.*, No. 13-cv-2176 (VB), 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014) (plaintiff failed to satisfy the liberal "plausibility" pleading standard where complaint did not identify which employee made the alleged defamatory statement); *Stevens v. New York*, 691 F. Supp. 2d 392, 399-400 (S.D.N.Y. 2009) (dismissing defamation claims against individual defendants where plaintiff failed to assert facts from which it could be inferred that any specific individual defendants uttered defamatory comments about him).

24

Even assuming the Amended Complaint pled the requisite specifics for a defamation claim based upon statements made to the DOL, this claim would nevertheless still fail because communications with the DOL are subject to an absolute privilege under New York law. *Allen,* 2001 WL 286788, at *6 ("[w]hen an employer writes to the Department of Labor concerning a former employee's right to unemployment benefits, that writing is subject to an absolute privilege and cannot serve as the basis for a libel action brought by the claimant employee"), *aff'd,* 64 F. App'x 836, 837 (2d Cir. 2003); *see also Viruet v. Citizen Advice Bureau*, No. 01-cv-4594 (AJP), 2002 WL 1880731, at *23 (S.D.N.Y. Aug. 15, 2002) ("any information [defendant] communicated to the Department of Labor regarding [plaintiff's] termination is privileged under state law"); *Lawson v. N.Y. Billards Corp.*, 331 F. Supp. 2d 121, 133-34 (E.D.N.Y. 2004).

For all of the foregoing reasons, this Court recommends the dismissal of Plaintiff's state law claim for defamation as a matter of law.

**VII.    *Plaintiff's Claims For Breach Of Contract and Unfair Labor Practices***

Plaintiff makes vague allegations of a contractual breach in the Amended Complaint. These allegations appear to relate to a perceived breach of Article XXV of the CBA in its handling of his disciplinary proceedings. It is far from clear whether these allegations are advanced as an adverse employment action in support of Plaintiff's employment discrimination claims, or whether Plaintiff intended to assert a stand-alone cause of action for breach of the CBA. To the extent Plaintiff intended to assert a stand-alone federal claim for breach of the CBA under Section 301 of the Labor Management Relations Act ("LMRA"), that claim is barred. Public employees (*i.e.,* employees of a state institution or political subdivision like CUNY) may not bring federal claims under Section 301 of the LMRA. *Ford*, 579 F.3d at 188 (2d Cir. 2009)

(holding that "the New York City Department of Health and Mental Hygiene is a 'political subdivision' of New York that is exempt"); *Baumgart v. Stoney Brook Children's Serv., P.C.*, No. 03-cv-5526 (DRH) (WDW), 2005 WL 2179429, at *5-6 (E.D.N.Y. Sept. 9, 2005) (dismissing claims again the State University of New York ("SUNY") on the grounds that it is a political subdivision that is not an employer within the meaning of the LMRA, explaining that "Federal courts have thus held that public employees cannot sue their employers under the LMRA for breaching collective bargaining agreements, and also cannot bring hybrid Section 301 claims against their unions for breach of the duty of fair representation"); *see also Lauser v. City Coll. of S.F.*, No. C-07-6464, 2008 WL 2357246, at *2-3 (N.D. Cal. June 6, 2008), *aff'd*, 359 F. App'x 755, 756-57 (9th Cir. 2009) (recognizing that state-created higher educational entities are excluded from the federal labor laws under similar circumstances); *Watford v. Union Cty. Coll.*, No. 06-cv-5542, 2009 WL 331425, at *2 (D.N.J. Feb. 10, 2009) (same).

To the extent Plaintiff purports to assert a breach of contact claim against the Individual Defendants, he has not alleged that the Individual Defendants were a party to the CBA or to any other contract with Plaintiff. A plaintiff "may not assert a cause of action to recover damages for breach of contract against a party with whom it is not in privity." *Oberstein v. SunPower Corp.*, No. 07-cv-1155 (JFB) (WDW), 2010 WL 1705868, at *4 (Apr. 28, 2010 E.D.N.Y. 2010) (quoting *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 215 (S.D.N.Y. 1997)). Therefore, this Court recommends that any claims for breach of contract or breach of the collective bargaining agreement be dismissed, to the extent Plaintiff asserted such claims at all.

Plaintiff's Amended Complaint also contends that Defendants committed an unspecified "unfair labor practice." Here again, it is unclear whether this is a reference to alleged

discrimination or a stand-alone claim.  Unfair labor practices are prohibited under the National

Labor Relations Act, as amended by the LMRA.  *See* 29 U.S.C. §§ 158 *et seq.*  But, as discussed

above, Plaintiff, a public employee, cannot bring a federal labor law claim against CUNY.

*Baumgart*, 2005 WL 2179429, at *5; *Ford*, 579 F.3d at 188.  In any event, Plaintiff has failed to

allege any facts to support his conclusory assertion, including what specific labor practice he is

challenging or when the complained-of conduct occurred. [14]  Accordingly, Plaintiff has no viable

stand-alone "unfair labor practice" claim.

**VIII.**    ***Dismissal Without Prejudice of Plaintiff's Gender Discrimination Claim***

For the reasons discussed above, most of Plaintiff's claims should be dismissed with

prejudice.  *See e.g., MacKinnon v. N.Y.C./Human Res. Admin.*, 580 F. App'x 44, 45-46 (2d Cir.

2014) (leave to amend need not be granted to pro se when "the problem with his complaint is

substantive [and] better pleading will not cure it") (internal quotation omitted); *Campbell v.

Rosenblatt*, No. 15-cv-5169 (JG), 2015 WL 6965186, at *2 (E.D.N.Y. Nov. 10, 2015) ("[The court]

need not afford [opportunity to amend] here where it is clear from plaintiff's submission that

she cannot establish a basis for this Court's subject matter jurisdiction and thus any attempt to

amend the complaint would be futile.").

In accordance with the special solicitude afforded to pro se litigants, however, this Court

recommends that Plaintiff's Title VII gender claim against CUNY be dismissed without prejudice.

*See Tracy*, 623 F.3d at 101 ("A pro se plaintiff should be afforded an opportunity fairly freely to

---

[14] Furthermore, in New York City, "the Board of Collective Bargaining has exclusive, nondelegable jurisdiction over improper labor practices. . . ."  *Peele v. N.Y.C. Dep't of Soc. Servs./Human Res. Admin.*, No. 92-cv-3765 (SWK), 1995 WL 728478, at *1 (S.D.N.Y. Dec. 8, 1995), *aff'd*, 112 F.3d 505 (2d Cir. 1996) (unpublished).

amend his complaint") (alteration and internal quotation marks omitted)); *Frasier v. General Elec. Co*., 930 F.2d 1004, 1007 (2d Cir. 1991) (noting that a district court should not dismiss an action without granting leave to amend at least once when the complaint gives "any indication that a valid claim" may be stated (internal quotation marks omitted)).  In deciding whether to file a Second Amended Complaint, Plaintiff should be mindful of the deficiencies in his Title VII gender discrimination claim discussed above, as well as those identified in Judge Preska's Order to Amend filed on December 15, 2015 (Doc. No. 5).  This Court recommends that Plaintiff be required to file a Second Amended Complaint, if any, within 60 days and that his failure to do so result in the dismissal of this action with prejudice.

Further, if Plaintiff elects to file a Second Amended Complaint, he is strongly encouraged to consult a new legal clinic opened in this District to assist people who are parties in civil cases and do not have lawyers.  The Clinic is run by a private organization called the New York Legal Assistance Group; it is not part of, or run by, the Court.  The Clinic is located in the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York, in Room LL-22, which is just inside the Pearl Street entrance to that Courthouse.  The Clinic is open on weekdays from 10 a.m. to 4 p.m., except on days when the Court is closed.  A party without legal representation can make an appointment in person or by calling 212-659-6190.

**CONCLUSION**

For the foregoing reasons, this Court respectfully recommends that Defendants' Motion

to Dismiss be **GRANTED** and the Amended Complaint be dismissed.

**SO ORDERED.**

Date:   January 19, 2017
        New York, New York

_Katharine H. Parker_
_____
KATHARINE H. PARKER
United States Magistrate Judge

**<u>NOTICE</u>**

**The Plaintiff shall have seventeen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure (*i.e.,* until February 5, 2017). *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). Defendants shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure (*i.e.,* until February 2, 2017).**

**If the Plaintiff files written objections to this Report and Recommendation, the Defendants may respond to the Petitioner's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Alternatively, if Defendants file written objections, the Plaintiff may respond to such objections within seventeen days after being served with a copy. Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**